## MILLER v. MILLER.

1. **Divorce:** FINDING BY JURY: PLEADING. In an action for divorce for inhuman treatment, endangering the life of the plaintiff, the allegation of the petition is not sustained by a finding that defendant's conduct was "such as to manifest a disregard of the marriage vow and obligations to his wife."

2. ———: ULTIMATE FACT: PRACTICE. Where interrogatories are submitted to the jury they must present the ultimate fact to be established, or elicit answers from which it may be concluded that the jury have determined the ultimate fact, or a decree cannot be rendered thereon.

3. ———: ALIMONY. Facts considered under which it was held that an allowance for temporary alimony was excessive.

*Appeal from Mills Circuit Court.*

THURSDAY, JUNE 8.

ACTION for divorce. The petition states that in 1873 the defendant at various times beat and ill treated the plaintiff, thereby endangering her life, and in an amendment to the petition plaintiff states that in 1866 and 1867 defendant deserted and refused to provide her proper and sufficient medicine when sick, or clothing and necessaries of life when she was well, and that he knocked her down and beat and bruised her, whereby her life was endangered, and which conduct it is averred was continued until 1873, when the defendant to save her life was compelled to abandon her home; that in 1866, the defendant cruelly and inhumanly treated the plaintiff by introducing into their home Rhoda Buckmaster, with whom the plaintiff lewdly, wantonly and licentiously cohabited, and encouraged and defended said Buckmaster in her cruel and inhuman treatment of the plaintiff. It is also stated in the petition that the parties were married in 1834, and that their children are all of age and are none of them living with their parents.

The answer admits the marriage and the allegation as to the children, and denies the residue of the petition. The answer further states that plaintiff left defendant in November, 1873,

at which time, in consideration of twenty-three hundred dollars paid her, the defendant relinquished all her right, title or interest in property owned by defendant. At the April term, 1875, the defendant was ordered to pay the plaintiff two hundred and fifty dollars as temporary alimony, and at the same term a decree was rendered granting a divorce and allowing plaintiff fifty-five hundred dollars as permanent, and seven hundred and fifty dollars as additional temporary alimony. The defendant appeals.

*Dailey & Burke* and *E. Starbuck*, for appellant.

A deed of separation between husband and wife, in which the stipulations are mutual and in accordance with the rights of each, will, at least so far as the wife's alimony is concerned, be enforced. (*Goddard v. Beebe*, 4 G. Greene, 126; *Cole v. Cole*, 23 Iowa, 433.) Where the wife's maintenance is provided for by her own voluntary agreement, she will be bound by it. (*Killiam v. Killiam*, 25 Ga., 186; *Robertson v. Robertson*, 25 Iowa, 350.). Where the wife has sufficient property, the reason for giving her either temporary alimony or money to carry on the action does not exist. (2 Bish. on Marriage and Divorce, § 394.) In the case of cruelty, under our statute the courts interfere not to punish an offense committed, but to relieve the complaining party from an apprehended danger. (*Beebe v. Beebe*, 10 Iowa, 133.) Ill treatment by the husband does not constitute ground for a decree when the wife gave the provocation. (*Knight v. Knight*, 31 Iowa, 451.

*Anderson & Eaton*, for appellee.

The law does not authorize nor sanction an agreement for a separation to the exclusion of the wife's claim for alimony in an action for divorce. (*McKee v. Reynolds*, 26 Iowa, 582.) A party has no right to evidence upon cross-examination unless there was something in the direct examination to call it out; and if it has been rejected by the trial court he must affirmatively show its competency. (*Mosier v. Vincent*, 34 Iowa, 480; *Wilhelmi v. Leonard*, 13 Id., 355.)

SEEVERS, CH. J.—I. The court on his own motion caused a jury to be impaneled and submitted sixteen interrogatories to them at the plaintiff's request, and fourteen at the request of the defendant. Two of those only submitted by the plaintiff had reference to the allegation in the petition in relation to Rhoda Buckmaster, and were as follows:

*1. DIVORCE: finding by jury: pleading.*

"4. Does the evidence show that the defendant committed adultery with one Rhoda Buckmaster?" This the jury answered in the negative.

"5. Was the defendant's conduct in connection with Rhoda Buckmaster such as to manifest a disregard on his part of the marriage vows and obligations to the plaintiff?" This was answered in the affirmative.

There was no charge in the petition that defendant had committed adultery with Rhoda Buckmaster, but as the jury have negatived such charge the defendant cannot justly complain that he was prejudiced by the submission of such issue.

The only issue made by the pleadings is, "was the defendant guilty of such inhuman treatment as to endanger the life of the defendant." Admitting that the allegations in the petition as to Rhoda Buckmaster amounted to this, the foregoing interrogatory and the affirmative answer thereto fall very far short of proving such issue. In what way did the plaintiff manifest a disregard of his marriage vows in his conduct with Rhoda Buckmaster; was it such way as to constitute such "inhuman treatment as to endanger the life of the plaintiff?" That it cannot be so determined from the finding of the jury is clear. The question and answer in fact determined nothing and are entirely immaterial, and the finding of the jury in this respect should have been set aside, or disregarded by the court below.

II. The other interrogatories propounded to the jury at the request of the plaintiff, and answered in the affirmative, were as follows:

"1. Did defendant strike the plaintiff?"

"8. Does the evidence show that the actions and conduct of defendant towards plaintiff were such as reasonably to leave

plaintiff to fear bodily injury from the hands of defendant?"

"13. Does the evidence show that plaintiff abandoned her home, or was driven therefrom by reason of the conduct, actions and treatment of defendant?

"14. Does the evidence show that the conduct, action and treatment of defendant towards plaintiff were such as to impair her health?

"15. Does the evidence show that the defendant at any time deserted plaintiff?

"16. Does the evidence show treatment on part of defendant towards plaintiff such as to shorten her life?

And those in the negative as follows:

"6. Does the evidence show there was such a failure or refusal of the defendant to furnish the plaintiff with medicine and food, the use of which was necessary to her comfort and physical well-being, as to amount to cruel and inhuman treatment such as to endanger her life?

"7. Does the evidence show that the conduct, action and treatment of the defendant toward plaintiff were such as to lead plaintiff to believe her life was in danger?"

"11. Does the evidence show words expressive of malignity on the part of defendant towards plaintiff, and reasonable grounds on the part of plaintiff to apprehend they would be carried into effect?"

The other interrogatories and findings of the jury are in no wise material. Most of those asked at the defendant's request were answered in the negative, and those that were answered in the affirmative in no manner tend to aid the plaintiff.

It is worthy of notice that the ultimate fact to be established before a decree of divorce could be granted under the issues joined, was not submitted to the jury. The nearest approach thereto is to be found in the 6th and 7th interrogatories, which were answered in the negative. If all the interrogatories propounded to the jury had been answered in the affirmative, it would have been impossible to have determined therefrom alone whether the statutory ground for a divorce had been proved. If causes for divorce are submitted to a jury, the ultimate fact necessary to be found and deter-

2. ——: ulti-<br>mate fact:<br>practice.

mined should be submitted to them, or such other questions as, when answered, lead the mind irresistibly to the conclusion that the jury have found and determined such fact before the findings can alone form a basis for a decree.

Taking these findings as a whole, bearing upon a given point to be established, we readily see they establish nothing. Some of them are contradictory of others, and looking at them alone, we have no hesitation in holding that they do not under any possible view warrant the decree made by the court below. They fall very far short of being a sufficient basis for a decree of divorce. This to us is so apparent that it is useless to take up either time or space in demonstrating such proposition.

III. It may be said, however, as the court below heard all the evidence, the decree may have been granted independent of the special findings, or both such findings and the knowledge of the court obtained from hearing the evidence. The testimony before the court below is before us, and we have each, separately, carefully read the evidence and each of us, separately, have arrived at the conclusion that in no possible view or aspect that can be taken of the case can the decree below be sustained. The charges of cruel and inhuman treatment rest almost exclusively on the testimony of the plaintiff alone. These charges are denied by the defendant, and the children of these parties testify that the defendant never mistreated the plaintiff. This unanimity is an unusual feature in the case. The fact that the plaintiff has for many years been addicted to the use of opium detracts largely from her testimony.

IV. In addition to the temporary alimony allowed, as heretofore stated, the court below ordered, in the event that 3. ——: an appeal was taken to this court, the defendant alimony. should pay the plaintiff twenty-five dollars a month until the determination of the appeal. It is not entirely clear, from the abstract, when the action was commenced, but it sufficiently appears that it was less than six months preceding the decree. The defendant is probably worth about sixteen thousand dollars. For the support of the plaintiff

during the pendency of the action and preparing for the trial, two hundred and fifty dollars was a fair allowance, in view of the fact that all costs must be paid by the defendant. Without now determining the effect of the alleged settlement it can be well said that the plaintiff was not without means of support; we, therefore, see no reason for the allowance pending the appeal. The allowance of seven hundred and fifty dollars must have been made for counsel fees; this is more than we feel justified in allowing. The allowance could only have been made for the trial of the cause in the court below, because it was not known there would be an appeal. We are of the opinion that two hundred dollars is a fair amount for the trial below.

The judgment and decree of the Circuit Court is

REVERSED.